**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawnah Kucken, | No. CV-22-00573-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Orsuga Consulting LLC, et al., | |
| Defendants. | |

Plaintiff Shawnah Kucken ("Plaintiff") has filed a Motion for Partial Summary Judgment (Doc. 106) against Defendant Orsuga Consulting LLC d/b/a Pinnacle Growth Advisors ("Defendant Pinnacle"), Defendant Brent Orsuga ("Defendant Orsuga"), and Defendant Susanna Orsuga[1] ("Mrs. Orsuga") (collectively "Defendants"). Plaintiff seeks judgment on the following issues: (1) her employment status, (2) her commission payments owed, and (3) Defendants' affirmative defense under the voluntary payment doctrine. (*Id.* at 1–2). The matter is fully briefed. (Docs. 107; 110).[2] For the reasons that follow, the Court will grant Plaintiff's Motion in part and deny it in part.

---

[1] Plaintiff represents Mrs. Orsuga is a party to this action because Plaintiff alleges that any action taken by Mr. Orsuga was done for the benefit of their marital community. (Doc. 1 at ¶ 6). Defendants assert that Mrs. Orsuga is named as a defendant solely in her capacity as the spouse of Mr. Orsuga for community property purposes. (Doc. 11 at ¶ 6).

[2] The parties have also filed unopposed Motions to Seal certain exhibits. (Docs. 104; 108). Finding good cause, the Court will grant Plaintiff's Motion to Seal Exhibit 4 (Doc. 104) as well as Defendants' Motion to Seal Exhibits F and P (Doc. 108) because these exhibits contain private financial information the parties' protective order. (Doc. 42).

I.      **Background**[3]

This is a failure to pay overtime case. Defendant Orsuga owns Pinnacle, which is a recruiting company that places job candidates with companies. (Doc. 111 at 2 (the prior Order)). Mrs. Orsuga is Defendant Orsuga's wife. Plaintiff owns Legacy Solutions LLC ("Legacy Solutions"), a business that helps find, screen, and place candidates for companies in the logistics industry. (*Id*.) In August of 2019, during prospective employment discussions, Defendant Orsuga suggested that Plaintiff create her own LLC. (*Id*.) Plaintiff created Legacy Solutions soon thereafter and began providing services to Pinnacle. (*Id*.)

   A.      **The Parties' Independent Contractor Agreements**

On April 9, 2020, Legacy Solutions and Pinnacle entered into an "Independent Contractor Agreement" (Doc. 107-1 at 41–49) (the "First Agreement"). On March 26, 2021, Legacy Solutions entered into a second Independent Contractor Agreement (*Id*. at 51–60) (the "Second Agreement"). The First and Second Agreements both state that "[t]he Contractor expressly acknowledges that Contractor will be an independent contractor and not an employee of the Company." (*Id*. at 44, 54).

Plaintiff was paid in accordance with a fee schedule set forth in Schedule A of the Agreement and the Second Agreement. (*Id*. at 42, 52). Schedule A of the Second Agreement, the operative agreement, provides various percentages that Plaintiff shall receive when recruiting candidates on behalf of Pinnacle:

- Plaintiff would receive a 20% commission for transactions where Plaintiff recruited the candidate but never "screened, spoke with, met, or had any involvement with the candidate" during the "Recruiting Function." (*Id*. at 59)

- Plaintiff would receive a 30% commission if she "screened, spoke with, or met with the candidate during the Recruiting Function, and the Company's Founder/President was also involved during the Recruiting Function." (*Id*.)

---

[3] Unless otherwise noted, the following facts are undisputed.

- Plaintiff would receive a 40% commission if she "managed the entire Recruiting function without involvement from [Pinnacle's] Founder/President.". (Doc. 107-1 at 59).

- Plaintiff would receive a 50% commission if Plaintiff "did the business development and located the client and the candidate during the Recruiting Functions (i.e. Contractor was not provided any leads from the Company), and the Contractor managed all Recruiting Functions without any involvement from the Company's Founder/President." (*Id*.)

The Second Agreement further states that Pinnacle will not "dictate the time of performance, except as necessitated by the service to be performed" and that Plaintiff "will be paid by or through the Company based on the work the Contractor is contracted to perform and that the Company is not providing the Contractor with a regular salary or any minimum, regular payment." (*Id*. at 55).

### B. Plaintiff's Role at Pinnacle

Plaintiff acted as Pinnacle's Director of Recruiting, and she used this title in all of her recruiting activities. (Doc. 111 at 2). In this role, Plaintiff's primary task was to screen potential candidates. (*Id*.) This matter involves various placements of candidates and alleged overpayments and underpayments for these placements, including candidates "Brandon Bay," "Nick K," "Alex Giani," and "Justin Day." (Docs. 106 at 15; 107 at 16).

Plaintiff recruited candidate Brandon Bay and was paid a commission of $4,370 for the placement. (Doc. 109-1 at 9). Pinnacle received a total of $13,350 for placing Brandon Bay at "Traffix." (*Id*.) Plaintiff was only owed $2,670 based on a 20% rate for the placement of Brandon Bay. (*Id*.) Defendants' records show that Plaintiff was paid $6,810 on 1/6/2020 for the placements of Brandon Bay and Alex Giani, but that she was only owed $4,670, so a total of $2,140 was overpaid to Plaintiff. (*Id*.)

Plaintiff recruited candidate Justin Day and Pinnacle received $28,500 for the placement. (*Id*. at 12). Plaintiff earned a 40% rate on this placement, but the invoice shows that she was paid $0. This is because "Legacy Solutions would have been owed $11,400.00, but Pinnacle had to credit the client for this placement." (Doc. 109-1 at 12).

- 3 -

Pinnacle still paid Legacy Solutions $10,200 for Mr. Day's placement, however. (*Id*.) Defendant Orsuga stated in his deposition that the commission for Brandon Bay was actually $21,850 but was listed as $13,350 because there was a $8,500 credit that needed to be applied for a different candidate: "Nick K." (Doc. 106-2 at 19).

Plaintiff terminated the Second Agreement with Defendants via email on September 9, 2021. (Doc. 111 at 2 (citing Doc. 60-1 at 175)).

### C. Procedural History

In April 2022, Plaintiff filed suit against Defendants alleging the following three claims:

(1) Failure and/or refusal to pay overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., against all Defendants (Doc. 1 at ¶¶ 30–34);

(2) Failure to pay wages under the Arizona Wage Act ("AWA"), A.R.S. § 23-350, against Defendant Pinnacle (*id*. at ¶ 35–40); and

(3) Unjust enrichment against all Defendants (*id.* at ¶ 41–45).

In their Answer (Doc. 11), Defendants assert that Pinnacle overpaid Legacy Solutions for commissions that were advanced by Pinnacle but not earned by Legacy Solutions. (*Id*. at ¶ 27). Defendants seek to offset any damages allegedly owed to Plaintiff with the overpayments they already made to her. (Doc. 107 at 17).

Defendants previously filed a Motion for Partial Summary Judgment regarding Plaintiff's AWA claim. (Doc. 60). In the prior Order (Doc. 111), the Court found there was a genuine dispute of material fact as to "whether an employer-employee relationship existed and a reasonable expectation that [Defendants] owed Plaintiff payment" and denied Defendants' Motion. (Doc. 111 at 1–2). Plaintiff has since filed her own Motion for Partial Summary Judgment regarding her AWA claim and other issues. (Doc. 106).

## II. Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Id.* Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994).

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex Corp.*, 477 U.S. at 323). If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or otherwise as provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

**III.  Discussion**

Plaintiff argues that she is entitled to summary judgment on four separate issues: (1) that she was Defendant Pinnacle's employee under both the FLSA and the AWA; (2)

that she was an employee of Defendant Orsuga for purposes of the FLSA; (3) she is owed certain commission payments; and (4) that the voluntary payment doctrine prevents Defendants from reducing Plaintiff's commissions due to alleged overpayments made to her. (Doc. 106 at 1–2). Defendants argue that these issues are "riddled with material factual disputes and not ripe for summary judgment." (Doc. 107 at 2). The Court will address each issue in turn.

### A.    The AWA

As to Count Two, Plaintiff argues that she was Defendant Pinnacle's employee under the AWA and thus entitled to AWA protections. (Doc. 106 at 12). This argument was resolved in the Court's prior Order (Doc. 111). There, the Court noted that Defendant Pinnacle had identified evidence suggesting Plaintiff was an independent contractor, but that Plaintiff also identified evidence that suggested she was an employee. (*Id*. at 5). Thus, the Court could not determine, as a matter of law, that Plaintiff was an employee under the AWA due to disputes of fact for the jury to weigh at trial. (*Id*.) In so finding, the Court had considered the eight relevant factors set out in *Santiago v. Phoenix Newspapers, Inc.* (*Id.* (citing 94 P.2d 138, 142 (Ariz. 1990)).

When interpreting these factors in the light most favorable to Plaintiff, the non-moving party there, the Court found that "a reasonable juror could infer that other evidence—including Pinnacle providing Plaintiff with an Outlook and LinkedIn Recruiter account, supplying all her office materials, naming her its Director of Recruiting, and Mr. Orsuga claiming she was his 'number two'—demonstrate[s] Plaintiff was an employee." (*Id*.)

For the same reasons as set forth in the Court's prior Order, the Court finds that Plaintiff is not entitled to summary judgment because a reasonable juror could also find that an employer-employee relationship did not exist between the parties. Put differently, a reasonable juror could find either way, given the conflicting evidence that each side presents as to the employer-employee issue. For example, Plaintiff signed an "Independent Contractor Agreement" with Defendants through her own LLC, Legacy Solutions. (Doc.

107-1 at 48). She also entered into a second "Independent Contractor Agreement" later on with Defendants. (*Id*. at 58).

The Second Agreement stated that Plaintiff "expressly acknowledges that [she] will be an independent contractor and not an employee of the Company." (*Id*. at 54). The Agreement did not restrict Plaintiff from contracting with other businesses through her own business, required Plaintiff to obtain her own business registration or license, if so required, and stated that Orsuga Consulting did not dictate the time of performance, except as necessitated by the service to be performed. (*Id*. at 55). Plaintiff also filed Legacy Solutions' tax returns as a sole operated LLC for tax years 2019, 2020, and 2021. (Doc. 109-1 at 2–7). Plaintiff testified in her deposition that she had "flexibility of hours that [she] could work" but also stated that she kept Defendant Orsuga apprised of when she would be working and that he required her to "to be up at a certain time so that [she] could work." (Doc. 107-1 at 21). These facts, in the aggregate, create a genuine dispute for the factfinder to resolve.

Because the facts are in dispute, the Court cannot determine whether Plaintiff was an employee under the AWA as a matter of law. *See Anderson*, 477 U.S. at 255 (the nonmovant is "to be believed, and all justifiable inferences are to be drawn in [their] favor"). Weighing and resolving these disputed factors is a role reserved for the factfinder at trial. *Gonzalez v. US Hum. Rts. Network*, 617 F. Supp. 3d 1072, 1097 (D. Ariz. 2022). Thus, Plaintiff is not entitled to summary judgment on this issue.

**B.     The FLSA**

As to Count One, Plaintiff argues that she was a joint employee of both Pinnacle and Defendant Orsuga for FLSA purposes and thus entitled to FLSA protections. (Doc. 106 at 2). For FLSA protections to apply, "Defendants must be 'employers' and Plaintiffs must be 'employees' under the Act." *Terrazas v. Carla Vista Sober Living LLC*, 2021 WL 4149725, at *4 (D. Ariz. Sept. 13, 2021). Employees are covered under the FLSA while independent contractors are not. *See id*. Defendants do not dispute that Pinnacle is an "employer" under the FLSA, but argue that Defendant Orsuga is not. (Doc.

107 at 15). The Court will address these arguments separately.

### 1.  Defendant Pinnacle

To determine whether an individual is an employee or an individual contractor under the FLSA, courts apply the "economic reality test" which states that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Real v. Driscoll Strawberry Assocs., Inc*., 603 F.2d 748, 754 (9th Cir. 1979) (internal citations omitted). Courts consider the following non-exhaustive factors to guide their application of the economic reality test:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanence of the working relationship; and
>
> (6) whether the service rendered is an integral part of the alleged employer's business.

*Id*. at 754. "The presence of any individual factor is not dispositive of whether an employee/employer relationship exists. Such a determination depends 'upon the circumstances of the whole activity.'" *Id*. at 745–55 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). This inquiry is a mixed question of law and fact. *See Terrazas*, 2021 WL 4149725, at *4. The determination of "the nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901, 910 (9th Cir. 2004). When the record contains evidence that supports contradictory findings regarding the nature of an employee's work, an inquiry into the facts must be made. *Bothell v. Phase Metrics, Inc*., 299 F.3d 1120, 1128 (9th Cir. 2002).

Plaintiff argues that, under the *Real* factors, she was Defendant Pinnacle's employee. (Doc. 106 at 2–12). Plaintiff states that she "worked continuously at Pinnacle

- 8 -

for two years, without any gaps, and her contract with Pinnacle was [for an] indefinite term." (*Id*. at 9). Plaintiff also states that Pinnacle provided her with access to an Outlook account, including a "Pinnacle" email address: "shawnah@pinnacleadvisors.com," which contained Pinnacle's contact information in the signature block. (*Id*. at 7). While this evidence certainly weighs in favor of Plaintiff, Defendants, the non-movants, cite evidence that weighs in Pinnacle's favor as well.

Defendants argue that Plaintiff was not Pinnacle's employee because "[Defendant] Orsuga did not issue Plaintiff specific day-to-day instructions; rather, he requested services of Legacy Solutions pursuant to their contract and, at times, provided mentor-like guidance." (Doc. 107 at 4). Defendants state that "Legacy Solutions was not restricted from contracting with other businesses" and that "Legacy Solutions earned specific percentages of commissions Pinnacle received based on Legacy Solutions' level of involvement in candidate placements." (Doc. 107-1 at 45). Defendants further state that Plaintiff's use of an office was an optional offer and that she was not the only person to use that office space, as Defendant Orsuga's daughter and Plaintiff's daughter sometimes did schoolwork in the office, and other business acquaintances would stop by and use the space. (Doc. 107 at 9 (citing Doc. 107-1 at 67–69). Defendants state that Plaintiff was not "required" to use this space or any items that Pinnacle provided her. (*Id*.) Defendants state that Plaintiff provided services to Pinnacle on a regular basis for nearly two years, but those services were structured around specific projects: placing job candidates. (*Id.* (citing Doc. 107-1 at 51–60)). Finally, Defendants note that Plaintiff owned and operated Legacy Solutions as a sole-proprietor and claimed her own business expenses. (*Id*. (citing Doc. 109-1 at 2–7)).

These facts, viewed in the light most favorable to Defendants as the non-movants, do not establish that Plaintiff was Defendant Pinnacle's employee as a matter of law. To make such a finding, the Court would necessarily have to make credibility determinations and weigh conflicting evidence—which is a job reserved for the factfinder. *See T.W. Electric Service, Inc*., 809 F.2d at 630-31. Defendants' list of controverting facts

establishes a genuine dispute of material facts remains for trial. Thus, Plaintiff has failed to demonstrate that no reasonable trier of fact could find other than for her, therefore, the Court must deny her request for summary judgment as to this issue. *Soremekun*, 509 F.3d at 984.

### 2. Defendant Orsuga

Plaintiff also argues that she was Defendant Orsuga's employee under the FLSA as "Pinnacle" is just a trade name for Defendant Orsuga Consulting, LLC. (Doc. 106 at 15). Defendants argue that Defendant Orsuga was not an employer under the FLSA because he did not supervise or control Plaintiff's schedule or conditions of her work. (Doc. 107 at 15). Defendants essentially argue here that (1) Defendant Orsuga is not an employer under the FLSA, and (2) even if he is an employer under the FLSA, Plaintiff was not his employee. (*See id.*)

Multiple employers may jointly employ someone for purposes of the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). All joint employers are individually responsible for compliance with the FLSA. *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983), *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985). Therefore, if Defendant Orsuga is Plaintiff's employer under the FLSA, he will be individually responsible for compliance with the FLSA. *See id*. The Ninth Circuit has "recognized that the concept of joint employment should be defined expansively under the FLSA" to effectuate its "broad remedial purpose." *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997) (internal citations omitted). "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the [FLSA] and is subject to liability." *Id*. at 1012 (quoting *Bonnette*, 704 F.2d at 1469).

To determine whether an individual or entity is an "employer" under the FLSA, courts consider a non-exhaustive four-factor test, including whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee

work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette*, 704 F.2d at 1470. The determination of whether an entity or individual is an employer under the FLSA is a question of law for the Court to decide. *See Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 511 (N.D. Cal. 2022) (citing *Torres-Lopez*, 111 F.3d at 638). Summary judgment may be proper "even when some factors favor joint employment and others do not." *Id.* (internal citations omitted).

Under this test, Plaintiff argues she was an employee and Defendants argue she was not. (Docs. 106 at 15; 107 at 15). Defendants argue that Defendant Orsuga is not an employer under the FLSA because he did not supervise or control Plaintiff's schedule or conditions of her work and that she had highly flexible hours subject to her own personal commitments and preferences. (Doc. 107 at 15). Defendants also note that Defendant Orsuga did not have the power to hire or fire employees because Pinnacle never had any employees, just other independent contractors. (*Id.*) He points to Plaintiff's deposition, where she testified that she had "flexibility of hours that [she] could work" but also stated that she kept Defendant Orsuga apprised of when she would be working and that Orsuga required her to "to be up at a certain time so that [she] could work." (Doc. 107-1 at 21).

Viewed in the light most favorable to Defendants as the nonmovants, the Court finds that Plaintiff has not met her burden to "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. Indeed, relying on the facts Defendants present iterated above, a reasonable trier of fact could find for Defendant Orsuga on this issue. Thus, because the facts are in dispute, Plaintiff is not entitled to summary judgment on this issue. Fed. R. Civ. P. 56(a).

### C. The Commission Allegedly Owed

Plaintiff next argues that Defendants failed to pay her the full amount of commission payments owed to her. (Doc. 106 at 15 (citing Doc. 106-2 at 18–19)). Defendants contend that Plaintiff was paid all of the commission payments she was owed according to the terms of the Second Agreement. (Doc. 107 at 16 (citing 107-1 at 59)). Defendants also argue

that the parties dispute the material facts as to this issue. (*Id.*) This argument relates to Plaintiff's claim for unjust enrichment. (Doc. 1 at ¶¶ 41–45). To address this issue at the summary judgment stage, the Court must address any ambiguities in the Second Agreement, which is a question of law. *See F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 962–63 (9th Cir. 2010) (stating that questions of contract interpretation are questions of law).

As stated, Plaintiff was entitled to either a 20%, 30%, 40%, or 50% commission rate when she placed a candidate for Pinnacle depending on how much work she did. (*See* Doc. 107-1 at 59). The Second Agreement further states that "[t]he fee schedule may be amended or changed from time to time as provided in writing and acknowledged by Contractor and the Company." (Doc. 107-1 at 52).

First, Plaintiff states that she was entitled to $21,850 in commissions for the placement of candidate Brandon Bay, yet she was paid only $13,350 because a "completely separate placement, 'Nick K,' didn't work out." (Doc. 106 at 15 (citing Doc. 106-2 at 18–19)). Plaintiff therefore claims that she is owed an additional $8,500[4] for this placement. (*Id.*) Second, Plaintiff states that she was entitled to a 40% commission when she sourced candidate Justin Day. Thus, when Pinnacle received $28,500 for the placement, Plaintiff claims she was owed $11,400.[5] However, Plaintiff represents Pinnacle only paid her $10,200—leaving $1,200 out of her owed commission. (*Id.* (citing Doc. 106-2 at 21–26)). In total, Plaintiff argues that she is entitled to $9,700[6] in commission payments that she never received from Defendant Pinnacle for the placements of Brandon Bay and Justin Day. (*Id.* at 16).

Defendants argue that Plaintiff has been paid all commission payments that she is owed. (Doc. 107 at 16). Defendants state that when Pinnacle's commission is subject to a discount from an unsuccessful placement, Plaintiff only earned the applicable percentage

---

[4] $21,850 - $13,350 = $8,500.

[5] 40% of $28,500 is $11,400.

[6] $8,500 allegedly owed commissions from Brandon Bay + $1,200 allegedly owed commissions from Justin Day = $9,700.

of the discounted commission, since it is what Pinnacle received. (*Id*.) Defendants note that Mr. Orsuga testified on behalf of Pinnacle that he did not believe Plaintiff had earned a 40% commission level in the parties' agreement for the placement of candidate Justin Day. (Doc. 107 at 16 (citing Doc. 107-1 at 231–235)). Defendants argue that Plaintiff did not earn a 40% placement commission for candidate Justin Day. (Doc. 107 at 16). Plaintiff argues that candidate Day is unrelated to this payment. (Doc. 110 at 9).

Upon the Court's review of the record, *Sealed* Exhibit P shows that Pinnacle received $13,350 for placing Brandon Bay at "Traffix." (Doc. 109-1 at 9). It also shows that Plaintiff was paid $2,670 based on a 20% rate for this placement but that Pinnacle "combined the payments for Brandon Bay and Alex Giani, and the payments owed to Legacy solutions were paid through [a] $6,810 transfer on 1/6/2020." (*Id*.) This exhibit also states that Legacy Solutions was owed $4,670 and that a total of $2,140 was overpaid. (*Id*.) This exhibit also shows that Defendants received $28,500 for the placement of Justin Day and that Plaintiff was the "source of recruiting function." (*Id.* at 17). The exhibit further shows that Plaintiff earned a 40% rate on this placement but was paid $0. This is because "Legacy Solutions would have been owed $11,400.00, but Pinnacle had to credit the client for this placement. Pinnacle still paid Legacy Solutions $10,200.00." (*Id*.)

During his deposition, Defendant Orsuga was asked about commission payments allegedly owed to Plaintiff. He testified that the commission for Brandon Bay was actually $21,850 but was listed as $13,350 because there was a $8,500 credit that needed to be applied for a different candidate "Nick K." (Doc. 106-2 at 19). Defendant Orsuga also stated that Plaintiff was not entitled to a 40% commission for placing candidate Justin Day, but that Plaintiff asked for a 40% commission, so Defendant Orsuga "obliged." (Doc. 107-1 at 233). Defendant Orsuga further stated that the $1,200 withholding is not reflected anywhere in writing, but that he and Plaintiff had a "verbal dialogue around the additional payments that would more than balance that out." (*Id.* at 236).

The record before the Court as well as the parties briefing display genuine issues of material fact as to the commissions owed. While the Court may interpret ambiguities in

the Second Agreement if necessary, Plaintiff does not argue why she is owed certain percentages for placing certain candidates. For instance, Plaintiff leaves out what rate she received, or should have received, for the placement of candidate Brandon Bay. On the other hand, Defendant Orsuga testified that he did not believe Plaintiff had earned a 40% commission for the placement of candidate Justin Day, but paid Plaintiff a 40% commission anyway because she had asked for it. (Doc. 107 at 16 (citing Doc. 107-1 at 231–235)). However, Plaintiff argues that candidate Day is unrelated to this payment. (Doc. 110 at 9). Defendants also state that Defendant Orsuga and Plaintiff had agreed that additional future payments would make up for a $1,200 withholding. (Doc. 107 at 16).

Viewed in the light most favorable to Defendants as the nonmovants, the Court finds that Plaintiff has not met her burden to "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. To find either way, the Court would necessarily have to weigh this evidence to discern the truth—something the Court cannot not do at the summary judgment stage. *Jesinger*, 24 F.3d at 1131. Thus, Plaintiff is not entitled to summary judgment on this issue.

### D. The Voluntary Payment Doctrine

Finally, Plaintiff argues that the "voluntary payment doctrine" prevents Defendants from withholding her commission payments to reimburse their own overpayments. (Doc. 106 at 16). Arizona's voluntary payment doctrine provides that "[e]xcept where otherwise provided by statute, a party cannot by direct action or by way of set-off or counterclaim recover money voluntarily paid with a ***full knowledge of all the facts***, and without any fraud, duress, or extortion." *Brown & Bain, P.A. v. O'Quinn*, 2006 WL 449279, at *6 (D. Ariz. Feb. 22, 2006) (citing *Moody v. Lloyd's of London*, 152 P.2d 951, 953 (Ariz. 1944)) (emphasis added). Arizona courts recognize this doctrine because, as a general rule, people "have power to do as they wish with their own. They may enter into contracts; they may give away their substance; they may spend it for mere baubles; they may exchange it for high and riotous living; it may go to satisfy vanity or pride or ambition; and the courts are helpless to say nay or to control their freedom of action in those respects."

*Id.* (citing *Merrill v. Gordon*, 140 P. 496 (Ariz. 1914)). This is so as long as the person is not disabled in some capacity. *Id.*

Defendants argue that the voluntary payment doctrine does not apply because they did not have full knowledge of all the facts that are now alleged by Plaintiff; specifically, that Defendant Pinnacle owed Plaintiff money. (Doc. 107 at 17). Defendants admit that Pinnacle "advanced payments" or overpaid Plaintiff on many occasions, but that "[i]f Pinnacle knew that it was required to pay Plaintiff's company additional money, it may not have made the overpayments it did." (*Id.*) Plaintiff argues that this "is not the sort of fact that is contemplated by the voluntary payment doctrine." (Doc. 110 at 10).

The parties do not cite authority that defines the "full knowledge of all the facts" requirement. (*See* Doc. 106 at 16–17; 107 at 17). The parties instead each attempt to rely on *Wood v. Northwest Hospital, LLC* to support their arguments. 473 P.3d 729 (Ariz. Ct. App. 2020). In *Wood*, the plaintiff, a doctor, sued the defendant, a hospital, for failure to pay $108,673.40 in earned wages because the defendant sought to recover certain overpayments made to the plaintiff by the defendant. 473 P.3d at 731. The plaintiff also asserted a claim for treble damages and the trial court granted summary judgment in the defendant's favor as it found there was a good-faith dispute over the withheld wages. *Id*. at 737. The plaintiff appealed and the Court of Appeals of Arizona reversed, concluding that the voluntary payment doctrine prevented the defendant from reclaiming any alleged overpayments. *Id*. at 738. The Court of Appeals noted that "payments made out of ignorance of the law are subject to the voluntary payment doctrine, even when such payments exceed a statutorily imposed maximum." *Id*. (citing *Anthony v. Am. Gen. Fin. Servs., Inc.*, 583 F.3d 1302, 1306 (11th Cir. 2009)).

The Court is also assisted by a case from this district: *Hannibal-Fisher v. Grand Canyon Univ*., 523 F. Supp. 3d 1087 (D. Ariz. 2021). In *Hannibal-Fisher*, a class of student-plaintiffs filed a class action against a defendant university due to its response to the Covid-19 pandemic. *Id*. at 1091. The plaintiffs alleged the defendant university did not deliver "the educational services, facilities, access, experience, and/or opportunities

that [p]laintiff and the putative class contracted and paid for" because they paid for on-campus in-person classes but received "subpar" online classes. *Id*. at 1092. The plaintiffs argued that they were entitled to a refund of all tuition and fees and brought causes of action for breach of contract, unjust enrichment, conversion, money had and received, and accounting. *Id*. The defendant university moved to dismiss these claims. *Id*. In addressing the plaintiffs' money had and received claim, the court noted that "[t]he general rule [under the voluntary payment doctrine] is that a party cannot recover money voluntarily paid with a full knowledge of the facts." *Hannibal-Fisher*, 523 F. Supp. 3d at 1099. However, the court found that the plaintiffs "did not pay with full knowledge of the facts" because they paid the defendant university "before knowing that [the university] would instruct students to return home and move classes online." *Id*. at 1099.

Here, the undisputed material facts show that Defendants voluntarily paid Plaintiff with full knowledge of the facts. Nothing in the Second Agreement required Plaintiff to track or refuse payments in excess of what she was owed. (Doc. 107-1 at 59). Pinnacle admits that it made "generous payments" to Plaintiff because it was "invested in [their] contractual relationship." (Doc. 107 at 17). Defendants facilitated a payment structure where they would consistently overpay and underpay Plaintiff at their whim—without written notice to Plaintiff. (*See* Doc. 105 at 2–5). For example, Defendant Orsuga testified in his deposition that he "was always prepaying" Plaintiff and that this was his decision to do so. (Doc. 107-1 at 229). Defendant Orsuga also stated that he did not expect Plaintiff to repay these overpayments if anything changed. (*Id*. at 230). Indeed, the parties' First and Second Agreements limited the amount of commission owed to Plaintiff, but Defendant Orsuga "erroneously or without careful analysis and tracking" overpaid Plaintiff and then wanted the money back. *Wood*, 473 P.3d at 738. In other words, when Defendant Orsuga would overpay Plaintiff he would underpay later, which violated Schedule A of the Second Agreement. The record reflects, and Defendant Orsuga admits, that he frequently overpaid Plaintiff and did not expect Plaintiff to return these overpayments.

Thus, because there are no genuine issues of material facts to refute that Defendants'

overpayments were admittedly voluntary, the Court finds that the voluntary payment doctrine prevents Defendants from withholding Plaintiff's owed commission payments. *See* Fed. R. Civ. P. 56(a) ("The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law."). In sum, the Court will grant Plaintiff's request for summary judgment regarding the voluntary payment doctrine. Therefore, Defendants overpayments cannot be credited against the commission Plaintiff is otherwise owed if she prevails at trial.

### IV. Conclusion

For the reasons set forth above, the Court finds that Plaintiff is not entitled to summary judgment regarding her AWA, FLSA or commission arguments. However, Plaintiff is entitled to summary judgment on her voluntary payment doctrine argument.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 106) is **granted in part and denied in part**. At trial, Defendants are precluded from relying on the voluntary payment doctrine to offset any damages regarding overpayments to Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Seal Exhibit 4 (Doc. 104) as well as Defendants' Motion to Seal Exhibits F and P (Doc. 108) are **granted**.

**IT IS FINALLY ORDERED** that, in light of Plaintiff's remaining claims for failure to pay overtime and unjust enrichment, the parties are directed to comply with Paragraph 10 of the Rule 16 Scheduling Order (Doc. 14 at 6) regarding notice of readiness for pretrial conference. Upon a joint request, the parties may also seek a referral from the Court for a settlement conference before a Magistrate Judge.

Dated this 29th day of January, 2024.

Honorable Diane J. Humetewa
United States District Judge